May it please the court, Ford submits that the District Court should be reversed for three separate reasons. First, the District Court misunderstood South Carolina law on proximate cause as it relates to circumstance when an injured person commits suicide. Second, the District Court improperly admitted the opinion testimony of the treating surgeon in violation of Rule 702 and Daubert principles. And finally, the District Court improperly rejected a 30% reduction in damages due to Mr. Wickersham's comparative fault in causing the enhanced injuries in this crassworthiness case. I'd like to start with the proximate cause question and we submit that the District Court made two mistakes here. First, the plaintiff submitted no evidence of proximate cause as established by the South Carolina courts. And second, in all events, the jury instructions improperly instructed the jury on proximate cause in the context of suicide. South Carolina law... You're talking about only the wrongful death claim. That is correct, Your Honor. His injury claim is independent of that argument. That is correct, Your Honor. Now, we argue also that if the court grants us a judgment as a matter of law on the wrongful death claims, that we're entitled to a new trial on the remaining claims. But that's separate. Why? Why? Because we have two related reasons. First of all, the evidence of suicide was, we think, irrelevant to the non-wrongful death claims. And in any event, was unduly prejudicial in the context of those claims. I would say... I would observe just to the contrary, you'll do a lot worse if you retry it and just have the injury claim, product liability claims, a crassworthiness claim. It seems to me the jury made a separate and robust award under the wrongful death count and made a separate award under the product liability count. That is true. The jury had two separate... I don't sense any prejudice to you in that type of an arrangement. Well, starting at the beginning of the issue, South Carolina law enforceability, we think, is clear. A result must be a natural and probable consequence. This is general South Carolina proximate cause law. Well, we have an expert here on South Carolina law. I understand that. Somebody who actually lives in South Carolina. Somebody who lives in North Carolina. A natural and probable consequence. And South Carolina excludes outcomes that are highly extraordinary. And in the context... What should we assert about that question to the Supreme Court? Well, we think the South Carolina law is clear. In the Scott case in particular, in the Crowley case, the South Carolina courts, Supreme Court and Court of Appeals respectively, have explained to what South Carolina law proximate cause principles are in the context of suicide. And what Scott said was that the tortfeasor must reasonably contemplate that suicide will follow. That's a quote. In order for proximate cause to be found. And in that case, remember, that was a case where a pharmacist, over the course of a year or so, gave somebody barbiturates. They became addicted. They became depressed. And ultimately committed suicide. And the court, very importantly, Scott said that while some suicides may result from the excessive use of drugs, because the vast majority of people who get addicted to these drugs do not commit suicide, there was no foreseeability, no proximate cause in that case. And we think the principle of Scott and Crowley applied directly in our situation here. And we would submit under those cases, the plaintiffs have submitted no evidence of trial of foreseeability as outlined in Scott. Do you think Scott is clear as to what the plaintiff must prove to satisfy the exception, to satisfy the causation under the question? We think that, yes, we think that Scott outlines that the tortfeasor must be able to reasonably contemplate that suicide will follow. And however you define that, plaintiffs failed to establish that here. There was no evidence in the record at all that Ford could reasonably contemplate that someone would commit suicide as a result of a defect in an airbag. The car was invented 130 years ago. There are literally hundreds of millions of cars that have been sold and operated in the United States. And as far as we can tell, and the plaintiffs didn't point to any cases challenging us, as far as we can tell, a car manufacturer has never been held responsible for a suicide resulting from a defect not only in a car airbag, or any other part of the car as well. So we think that shows that this is just simply not a foreseeable result here. The vast majority, using the language of Scott, the vast majority of people who are injured in car accidents, or cars with defective parts, cars with defective airbags, the vast majority do not commit suicide. And Scott says in that circumstance, foreseeability, that proximal clause is not established. Now, the plaintiff's argument is they break down the causation inquiry into little steps. They say, well, it's foreseeable that if you have a defect in an airbag that there might be an accident. It's foreseeable that an accident might cause injuries. It's foreseeable that injuries might cause persistent chronic pain. It's foreseeable that chronic pain can cause suicidal ideations. And it's foreseeable that someone with suicidal thoughts might commit suicide. And they say, since each one of those steps is foreseeable, the entire chain is foreseeable. And that's just not how proximate cause is done, either under Scott and Crowley or under proximate cause principles. In fact, if you follow that line of analysis, it would turn the presumption against suicide, the tortfeasor being held for suicide, would turn that presumption on its head. American law has always, and this includes South Carolina law, has always held as a general rule that suicide breaks the chain of causation. And the presumption is that the tortfeasor is not responsible for a suicide. If plaintiff's argument were accepted, this court would be the first court to hold that a product manufacturer being sued in a product liability theory is liable for suicide. And they would simply destroy the presumption. But isn't that a question of state law? That is a question of state law. So it sort of goes back to what my colleague had suggested. We don't really opine on state law. Well, you apply state law. Right. And there is no state law one way or the other on this. Well, we think, respectfully, we disagree. We think Scott and Crowley both, if you interpret those opinions as expansively and in an appropriative way as possible, there's still no evidence at trial of foreseeability here. The plaintiffs submitted no evidence that Ford could foresee that someone would commit suicide as a result of a defect in an airbag. As I just mentioned, no court had ever held a product manufacturer responsible for suicide as a result of a product defect in a product liability case before. So this would be the first time that that happens. And as a matter of law, we think that means this was not foreseeable. I'd also note that the jury instructions plainly did not follow South Carolina law. The district court, and this is at page 556 of the Joint Appendix, instructed the jury, quote, put differently, a plaintiff may recover for the wrongful death when the defendant's actions made the person incapable of controlling his or her own actions, unquote. And that is just plainly wrong. That eliminates completely any required element of foreseeability. A plaintiff cannot recover just by showing an irresistible impulse to commit suicide. A plaintiff can only recover if the irresistible impulse to commit suicide was foreseeable. Not only did it exist, but it was foreseeable. And the district court, jury instructions completely eliminated that requirement. The second reason that the district court should be reversed and that we're entitled to a new trial is that the court improperly admitted the opinion testimony on causation of Mr. Rikersham's treating surgeon, Dr. Schoner. And the fact of the matter is that her opinion about the cause of the accident simply violated Daubert principles. We don't dispute the fact that she could testify about the injuries that he suffered, that she saw, and she could testify how she treated him. That was fact testimony. But she went on to testify that she believed, in her medical opinion, that his injuries were caused by the airbag. Well, let me ask you this. The airbag did discharge. Yes. And it seems to me, in the context of both parties, the deceased either hit the airbag or, under your theory, missed the airbag or was pushed aside by the airbag because he was leaning down and hit the gear lever or something hard on that side. And her opinion was, based on my observations of the injuries, it was more of a direct impact in the center and it wasn't just the, what was it, the left side, I think, is more the facial. And the important part of that conclusion leads to the fact that it would have been the airbag that caused it as opposed to the gear shift. It seems to me that pretty much falls within her ability to express an opinion where the impact came on her face. Well, the problem, Your Honor, respectfully, is we believe that line of analysis looks at the conclusions of her opinion, not the methodology. It's true, by the time she got to her deposition, as in every case like this, the plaintiff will have his or her theory of what the cause was, the defendant will have. Let me ask you this. Let me go back just a little bit more preliminary then. Would she be capable of determining the direction of the force that broke the bones in his face? Well, she said she didn't. She was specifically asked that question. The directionality of the force. No, she testified at trial that she was able to. No, she testified, but she testified expressly, both at the deposition and at trial, was that she did not inquire into the mechanism of injury. She was asked. Not the mechanism. I'm talking about the direction of the force. What she testified to was that the force impacted both sides of his face. Right. Now, that would exclude, then she said, well, because of that, I don't think it was the gearshift. Yeah. And that's a logical follow-up. That's my whole point. In other words, if she's able to say it was a direct facial as opposed to a more side hit, it seems to me the next step is just a logical conclusion. She wouldn't have to say it was the airbag. That's the only thing it could be for the direct. Well, two things, Your Honor. First of all, she conceded that there were other potential causes within the car that could have created the same injuries. What? What else? The dashboard, for example. Well, I thought the airbag. It did, but she never inquired whether he could have hit the dashboard. She never inquired. Nobody suggested. How can you hit the dashboard if the dashboard's behind the airbag? Well, the dashboard is behind the airbag, but he was also out of place. If he's out of place, he's going to have a side hitting. Your Honor, the key point is that the dashboard analysis requires, and the district court said, well, she conducted a differential diagnosis, which is sort of, I think, what you're suggesting, a similar thing. She had to exclude these possibilities before coming to her conclusion, right? It's not enough afterwards to say, I think it's the airbag. What she basically conceded was that she said it's consistent with the airbag because it's both sides of his face. He told me it was the airbag. Therefore, I think it's the airbag. During that analysis, she never considered any other causes. Now, she had done what Your Honor suggested. Well, she did because she explained how the impact was a 90-degree impact with her face. I mean, direct on as opposed to the side because it hit the other side also. That's right. But she did not look at other causes. Now, if she had looked at other causes, it can't be the dashboard because of the airbag and where he was positioned. That's a pretty close issue. I think your last issue is a little bit more important, and you've given it up almost. No, I'm not giving it up at all, Your Honor. I was trying to cover both of them, but I'll reserve the balance of my time. All right. All right, Ms. Barnes. Your Honor, may it please the Court. Starting first with the wrongful death foreseeability of suicide issue, our first response to that and numerous issues on appeal are that Ford actually never raised them below and the district court never ruled on them. So I just want to point that out before I get past the merits. Well, we looked through the record, and there are quite a few places where they talked about foreseeability in their arguments, and I think it's better to leave. I think it's pretty clear that they made this point repeatedly, the causation, and even used the word foreseeability two or three times. As I said, we would obviously disagree with that, but I will move on. As to what is the foreseeability standard, it is laid out under South Carolina law. It's just not that we have to specifically show Ford knew suicide would occur as a result of an airbag debate. Why not? In other words, the whole notion about negligence and tort is the foreseeability of injury and you don't have to address matters that are not foreseeable. And I didn't think you'd be making that argument. I mean, you agree there's no evidence in here that Ford knew was foreseeable and could know. No, Your Honor, I believe there is evidence in the record, even under the foreseeability standard that they're putting forth for the first time on appeal. If suicide is foreseeable in this case, then suicide is foreseeable in every single motor vehicle accident. Because every motor vehicle accident results in pain, results in conditions of permanent injury, disfigurement, and so forth. And everybody could argue every time a person commits suicide, the manufacturer is liable. I don't follow that. This is 18 months after he suffered bipolar depression before the accident and even had ideations of suicide before the accident. And I didn't see you put in any evidence that it was foreseeable to Ford that if they made a defective part of the airbag, defective airbag, that it would cause suicide. Well, first of all, Your Honor, I don't think that's the correct standard, but our secondary argument to that would be even if it is... What do you think the standard of foreseeability is under tort law, generally? Exactly what Judge Norton used in this case. You didn't mean risk foreseeability. Just give me what you think the standard of foreseeability is in a tort. In a general tort? Yes. The standard of foreseeability is that you have to show that the defendant was aware that their conduct could cause some injury but not the particular injury that occurred and that their conduct was a direct cause but not necessarily the sole cause of the injury that occurred. And what Ford wants to do is wipe out all of that and say in this particular context of suicide, you have to show we knew the particular injury that occurred and we were the sole indirect cause of that injury. Except the... And I would submit that the general proximate cause analysis you just asked me about fits within the context of what you have to prove in suicide. The general rule that suicide is not foreseeable but not recoverable as a matter of law applies unless the plaintiff shows the uncontrollable impulse exception. And that standard or that law is actually in all of the things that Ford cites for the supposed general rule that says suicide is never recoverable. Both sections of the ALR and the Johnson versus Wal-Mart stores case go on to say except if you have a case with these particular circumstances and that is this case. There was that evidence in this case through the testimony of Donna Schwartz. And that was not necessarily disputed about Ford because they didn't put up their psychiatric experts. So the uncontrollable impulse exception is essentially two parts. You have to show that the plaintiff actually suffered from an uncontrollable impulse and that that impulse was proximately caused by the defendant's conduct. That's exactly what Judge Norton charged the jury here. And that general proximate cause law fits within that framework when the jury is determining whether the uncontrollable impulse was proximately caused by the defendant's conduct. So it's not some new proximate cause standard that puts away all of the general law that we've all heard since law school. It just fits within a particular context in the suicide situation which is essentially telling the jury how you prove causation continued from the accident through the suicide itself. I think that is really an excellent enunciation of your position. Do you have a case that holds that? I don't have a case that lays it out exactly the way that I did, Your Honor. But I think the Scott and Crawley cases both actually support that in that the court didn't just say, hey, this was suicide, you can never recover. They went on to actually talk about the facts of the case. And in the Scott case, the court noted it's generally impossible to say what would cause a suicide because there are so many factors that can go into it. But in the very next sentence it says to do that, the court would have to be able to eliminate all of these other factors that might also have caused the suicide. And I would posit that that's the evidence and the theory we put forth in this case through the trial testimony of our psychiatric expert. She addressed all of the factors that Ford threw at her, the attenuation of time, the preexisting bipolar disorder, the prior suicidal ideation. We went through numerous pages of the transcript of all of his medical records from the time of the accident until the time of the suicide showing he really wasn't experiencing depression for quite a while, that his bipolar disorder or whatever prior suicidal ideation he had had cleared up such that she was able to say, in her opinion to a reasonable degree of medical certainty, that the chronic pain from the airbag injuries is what led to the uncontrollable impulse to commit suicide. You brought your complaint in state court, right, and it was removed? Yes, that's correct. So given all of that, we think that also there was evidence there even if you want to adopt this new foreseeability standard from Ford, which I don't think is supported by South Carolina law or the law in general as stated. You mean South Carolina law doesn't require foreseeability? It does require foreseeability. Of course it does. Yes, Your Honor, we're not saying that we don't have to prove foreseeability in this case. We're just saying, as they've said in their reply brief, they're arguing it's a heightened standard, that it's somehow different from a cause that exists. No, but there was no evidence of foreseeability. I couldn't find any. In other words, the question is, when you manufacture a defective airbag, is it foreseeable that the people injured by a defect in the head are going to commit suicide? And the answer is no. It's just so rare and you don't expect it. And here we have a suicide that's foreseeable, committed by a person who is already bipolar and already had ideations of suicide and didn't commit suicide for 18 months afterwards. And it seems to me that all has to be foreseeable. And I didn't see you put any evidence in on that. Your Honor, two responses. You didn't ask them whether they had ever had other accidents where people had committed suicide, any kind of accidents, did you? I do not believe that question was asked at trial. In response to everything you just said, I have three responses. First, the fact that he already had bipolar disorder does not eliminate their liability, the plaintiff. No, no, I'm not talking about liability. I'm trying to keep my focus on the foreseeability too forward at the time it manufactured the car. And the second point I would say as the first point of evidence is the owner's manual. In the joint appendix at page 1159, I believe, it says that Ford is telling the owner in the owner's manual that an airbag has risk of death or serious injury. So they knew that the airbag or a defect in the airbag or the going off of the airbag could cause death. And a defectively manufactured tire can cause death. I mean, all of these things can cause death. But the question is whether they anticipated suicide in building this. Well, that's the question. If the standard is that we had to prove they should have foreseen the particular injury that occurred. And in addition to the owner's manual, I think there was testimony from five experts, approximate cause can be proved by direct or circumstantial evidence, that went to the fact that Ford knew serious injuries and or death could occur from an airbag. Their 30B6 design defect expert, Ram Krishnaswamy, said that they designed airbags to try to prevent injuries. Dr. Scott also testified about that as well as Mr. Caruso. And Dr. Levin, one of the pain doctors who treated Mr. Wickersham, said, talked about the trigeminal nerve in the face, which the face is obviously the most commonly impacted part of the body with an airbag, and said that pain is worse than anything you can imagine because it's close to the brain, that it is common sense that chronic pain diminishes capacity and that he's treated numerous chronic pain patients who had airbag injuries. And Donna Schwartzmatics testified that 50% of people with chronic pain will have suicide ideation and that studies support that link. So we're not talking about something that's not supported by scientific literature or that wasn't suggested by numerous experts at trial. So I think taking all of that in the context of the fact that we don't have to prove Ford knew suicide could occur as a result of this case, and if we had tried to put forth evidence that they knew, I think they would have objected. They filed motions in limine in this case to prevent any testimony about their state of mind or knowledge and other similar incident testimonies. So some of the things they're suggesting we should have done, I would posit they would have strenuously objected to even if it existed. You weren't allowed to take depositions or get material from them about other prior incidents? To be honest, Your Honor, I was not involved in the discovery, so I don't know exactly what happened. I do know they took depositions, and I think there was some evidence about other similar incidents, but I'm not sure that it was geared specifically at the suicide issue. As I said, we believe the jury instruction adequately stated the law. Judge Norton went to a lot of pains to go through and craft the suicide jury charge, and actually Ford didn't object to it. He essentially said at one point, counsel for Ford said, okay, now we need to talk about the suicide instruction, and the district court said, I know your argument is suicide shouldn't come in, but if it does, this is okay. And he said, yes, Your Honor, you're right. We object to suicide coming in at all, but these charges are sufficient. So I don't think that argument was made, but even assuming it was, I think the jury charge is correct. And the sentence that they're pointing to is just another way of saying what Judge Norton already said. It doesn't somehow eliminate the fact that we were required to prove proximate cause, and the jury was required to find it. The verdict form specifically instructed them on that. They got a general proximate cause charge, and they got the suicide charge, which laid out the general framework I discussed, and then explained to the jury, here are the things you can consider in determining whether there was an uncontrollable impulse. If there are no more questions about that, I'll move on to the issue about Dr. Schoner. Could you address the reduction comparative fault issue? Yes. I have some difficulty with that because I understand the proposition that comparative negligence in the cause of the accident is irrelevant to the crash worthiness. But in this case, the jury found that he was comparatively 30% at fault in the use of the device. Right. Which now seems to me he should bear the 30% loss on that as just a matter of logic. If you have comparative negligence. Why shouldn't that apply in this circumstance where the jury explicitly found that it's not related to the cause of the accident, but to the cause of the actual injury? It does apply only to the negligence action. So we're not saying that that is a completely irrelevant defense, or it can't be made, or there can be no evidence. Let me ask you about that, too. It seems to me a vast majority, and it's even getting more, treats product liability as a separate area. They have not compartmentalized strict liability and product liability in contractual aspects and tort aspects. They call it product liability. And comparative negligence in those cases, these other states have all said you apply the comparative negligence. Now we do have, in this case, the Don's case, which has, in my judgment, two conflicting statements in it. One, it talks about strict liability and product liability being statutory and that they have to be addressed statutorily. And in a footnote, it sort of goes the other way. It said comparative footnote four. It seems to go the other way. I don't know how to read Don's, but the overall notion in South Carolina seems to be that product liability is a whole area of law. And in a crashworthiness case, you would generally reduce if the product caused the injury. It would reduce 30%. This might be a good area to have the Supreme Court of South Carolina address that because of its ambivalence in Don's. That's the only real guidance we have, isn't it? I think that's the most direct on-point guidance that there is. And don't you agree that the signals in Don's are mixed? I don't agree, Your Honor, and here's where I'll explain why. I understand the concern about what the footnote says, but if you put that in context of the case that they're citing, they're citing Jimenez 1. And before they cited to it in that footnote, they specifically said that the crashworthiness action in Jimenez was brought under a negligence theory. And so I think that that footnote, when they're saying we agree… It's footnote 4. It says, our ruling today is limited to the certified questions before us which concern only the applicability of comparative negligence to a plaintiff in causing the collision in a crashworthiness case. We note, as did the district court in Jimenez 1, that, quote, comparative negligence related to the defective component itself, tying a door shut, for example, could still be a defense if a factual basis existed. And so your argument is that because they were dealing only with negligence, that you still have the exception for strict liability, but that still doesn't follow from the defective door, the hypothetical… I mean, it could be… Anyway, I understand your argument. It's a perfectly fine argument. It's just, to me, I read that signal as a little different because of the whole comparative negligence assumption and the distinction they're making between crashworthiness and the cause of the accident. And the court followed the stream of cases around the country that basically says, contributing to the cause of the accident is irrelevant to the crashworthiness aspect. Correct. But in this case, the comparative fault related to the crashworthiness. That raises the difficult issue, I think, and maybe it's a new issue. I think that Donzie actually, that the principles laid out in that case really squarely cover the issue before this court. And I completely understand the factual distinction that you're making. And we've never denied or argued against that factual distinction. I mean, really, the facts in this case, I must take it out of the crashworthiness context because you're not separating the fault in the initial collision from the fault in the enhanced injuries for the saying you caused your enhanced injuries. Well, the jury answered the question. The jury basically said the product. He was comparatively negligent in use of the product. Correct. I don't quite know what that means. I guess he was probably, they probably concluded he was leaning or something. That's what we believe. That's sort of strange in and of itself because I don't know if that's a misuse. But I do believe the legal theory is, it looks to me like South Carolina intended to adopt the crashworthiness doctrine. When was 2012 or whenever they adopted that and followed the national trend in that area. And everybody nationally, I think, is making the distinction not between contract towards strict liability, product liability, but the whole area of product liability and comparative negligence applies. South Carolina may not do that. Maybe my good colleague, Judge Norton, knows exactly the answer down there because, you know, it comes up through the water and the soil. I think South Carolina still maintains those distinctions. We actually recognize crashworthiness extremely early on, I believe. The Mikkel-Versen-Blackman case was in the late 1960s. So we've recognized that doctrine for a very long time. And I think there's good evidence in Donzie that our Supreme Court is saying we still recognize the distinction between negligence, strict liability, and breach of warranty because it says that strict liability and breach of warranty are statutory causes of action, as are the defenses to them. And in going through talking about what all these other states have done with crashworthiness, they point out that there's no South Carolina statute that says comparative negligence in a crashworthiness case applies and says, well, these are statutory causes of action. Our legislature hasn't seen fit to say that comparative negligence applies to these theories. If they wanted to do so, they could do it, implying that that hasn't been done and that that defense doesn't apply to those theories unless and until the General Assembly does that. And then they even go on to point out that applying comparative negligence to strict liability and breach of warranty would conflate those theories, you know, the no fault, breach of warranty as a contract, you can recover punitives for negligence but not strict liability and breach of warranty. And they cite a South Dakota case for that principle that says it's inconsistent to look at the user's negligence but not be able to look at the defendant's negligence. So I think those principles that are stated in Donzie are directly applicable to the question that we have in this case. And really, I think Judge Norton was correct to say that if the Supreme Court were presented with this issue, that's what they would find based on those principles. I see my time is up. I didn't get to address anything about Dr. Schoener, so if you all have any questions for me about that or... Thank you. Thank you. Mr. Charns. Thank you, Your Honor. Starting with the proximate cause question, we think Scott does set up a specific requirement that the suicide be foreseeable. And if you look at, just quoting from the opinion page 328 of the regional reporter, the court says, while it may be true that some suicides may result from the excessive use of drugs, such as barbiturates, yet as a vast majority of people who use this form of drug do not commit suicide, it could not be said that he who sells the drug may reasonably contemplate that suicide will follow. That he who sells the drug may reasonably contemplate that suicide will follow. And there's no evidence in this record, Judge Niemeyer, as you pointed out, from any plaintiff's experts, that Ford could reasonably anticipate that suicide would follow. And if it's enough to show that serious injuries would result, then suicide is always foreseeable in any product defect case, not only with a car, but any product that could cause serious injuries. And then it may be, you know, in a product liability case or a malpractice case involving antipsychotic depressant drugs. Absolutely. Because there it's foreseeable. They have data to show that there's ideations. You give somebody a particular drug to address depression, they could commit suicide. I would say in that circumstance, it's foreseeable. And then the question is whether there was negligence, of course. That's absolutely right. But it seems to me you have analogous type of data showing that defects in cars, it's foreseeable that people will commit suicide. So do you remember back in law school that we had the fragile plaintiff? Yes. Okay. Just bear with me a second. Sure. So it's foreseeable that you might have a fragile plaintiff physically, right? Yes. Why isn't it foreseeable that you might have a fragile plaintiff mentally? Well, that's just simply not been American law. And the reason I think is because if you – the fragile plaintiff, there's only one physical cause, right? You hit – say a person has a fragile bone in his or her arm. You hit the arm and it chatters unusually. Here there's an intervening act, right? The suicide is a separate intervening act by the injured party. And American law has – common law, it was an automatic rule, of course. Standing alongside the fragile plaintiff, the eggshell plaintiff principle, was a common law rule that suicide broke the chain of causation and you could not recover for the injuries resulting from the suicide. And American law in the last few decades has softened that a bit. Pushed that up a bit. A bit. But still, in South Carolina, we haven't challenged this on appeal. Even if there's an irresistible impulse concept that allows you theoretically to recover for suicide, the irresistible impulse itself must be foreseeable. Foreseeability is not eliminated as part of the cause of action for product liability. And as Judge Niemeyer, we pointed out in our – I think our opening brief, there are two contexts in which you can recover for product defect. One is drugs that have a direct impact on the brain. Pharmaceutical manufacturers know this and study it. And the second is products that are designed specifically to prevent suicide. So windows that are designed in psychiatric hospitals to make sure they cannot be opened or broken to allow a suicidal person to jump out. In those circumstances, suicide is foreseeable. But we haven't found any other case in the United States in which an appellate court has affirmed a product defect claim that resulted in suicide for that reason. Have you found a bunch of cases in which appellate courts have rejected that theory? No, it hasn't really come up. No, I haven't either. It hasn't come up. Believe me, we love Judge Motz. But where does that leave us? At least it seemed to me to say that this is a question of state law. Well, it is a question of state law. And I think the reason that we don't find cases – You went to federal court. Well, it's a diversity case, Your Honor. I understand. I didn't say you didn't need to go to federal court. But I'm not sure that there's – I'm not sure we're in the position to determine what the law of South Carolina is on that question when you and I both agree that there are no cases saying that this is a cause – that you can establish a cause of action this way, and no cases saying you can't. Well, I think, Scott – Well, I understand what your position is. But if we would read back the transcript a few pages, you answered me, I think, truthfully, that there aren't cases right on point either way. I think the reason there are no cases rejecting this is because plaintiffs aren't bringing it because of the strength of the presumption in American law that suicide is not recoverable. I want to make two points about Don's before my time runs out. The first is that Don's itself was a strict liability breach of warranty case. It wasn't a negligence case. And if the plaintiffs were right that it rejected application of comparative fault principles, the opinion would have been very short. It would have said strict liability and breach of warranty claims are statutory claims. There's no statutory defense. Case is over. And, in fact, Don's expressly said – You know, that's a point well taken. And that just strengthens the tension that's created by footnote four. The conflicting statements relate above when they talk about defenses, statutory defenses, that they are statutorily created and, therefore, we have to rely on statutory defenses. It puts it in question in my judgment. And if you read footnote four alone, in the context of what you're saying, I do recall now it's a strict liability case, I would think there would be a pretty clear statement of South Carolina law. But then you have those dicta in the main text relating to strict liability being statutory. Well, I agree with you. The opinion could be a little bit clearer in places as to what the court is saying. But I think one thing is clear is the court was not distinguishing between strict liability and breach of warranty claims on one hand and negligence claims on the other hand. Before footnote four, the court said in text, although the crassworthiness action in Jimenez, that was the prior case in the federal district court, was brought under negligence theory, as opposed to the strict liability and breach of warranty claims at issue in this case, we see no reason to distinguish between these theories of liability when utilized in conjunction with the crassworthiness doctrine. And then it continues on. And then the end of that paragraph is footnote four. So I think if you read it in context, what the court is saying is that it's not making a distinction between the statutory claims and the common law negligence claim and that comparative fault would apply. All right. Thank you. All right. We'll adjourn court for the day, come down and greet counsel. This honorable court stays adjourned until tomorrow morning. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Henry F. Floyd